**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF VIRGINIA**
**Lynchburg Division**

| | |
|---|---|
| In re WDRL-TV, INC. ) | Case No. 06-61051 |
| ) | |
| Debtor, ) | |
| ) | |

## **MEMORANDUM AND ORDER**

This matter comes before the court on a motion for consideration of the fee applications of Charter Communications VI, LLC ("Charter").

### *I. Jurisdiction*

This Court has jurisdiction over this matter. 28 U.S.C. § 1334(a) & 157(a). This is a core proceeding. 28 U.S.C. § 157(b)(2). Accordingly, this Court may enter a final order. This memorandum shall constitute the Court's findings of fact and conclusions of law as directed by Fed.R.Civ.P. 52, which is made applicable in this proceeding by Fed. R. Bankr. P. 7052.

### *II. Facts*

WDRL-TV, Inc., ("the Debtor") is a corporation that operates as a television station. Melvin N. Eleazer ("Eleazer") is the sole shareholder and principal officer of the Debtor. He is also the sole shareholder of MNE Broadcasting, L.L.C. ("MNE"). On or about November 10, 2004, Charter sued the Debtor and Eleazer (together, "the Defendants") in the United States District Court for the Southern District of West Virginia ("the District Court") for breach of contract seeking damages in the amount of $274,376.45 plus interest and costs and attorney's fees ("the West Virginia Litigation"). The Defendants did not file a counterclaim in the West Virginia Litigation.

The District Court found, on Charter's motion for summary judgment, that the Debtor owed Charter $274,376.45 plus interest under a Retransmission Consent Agreement. The District Court also found that Charter was entitled to reasonable costs and attorney's fees.

On July 11, 2006, the Debtor filed a chapter 11 petition initiating the above-styled bankruptcy case ("this Bankruptcy Case"). On August 18, 2006, Charter filed a proof of claim in the amount of $647,467.01. On August 22, 2006, it filed an amended proof of claim in the same amount. On May 3, 2006, it filed a second amended proof of claim in the amount of $759,978.67.

On March 7, 2007, the Debtor filed a motion to enter into an agreement to sell virtually all of the assets of the debtor and of MNE to Liberty University, Inc., ("Liberty") outside of the ordinary course of business pursuant to 11 U.S.C. § 362(b). The assets to be sold included a license issued by the Federal Communications Commission providing the right to transmit television signals ("the License"). After Charter objected, the parties entered into a settlement agreement ("the Settlement Agreement") which was executed by the counsel for the Debtor, counsel for Charter, counsel for MNE, counsel for Liberty, and counsel for Eleazer.

The Settlement Agreement provided, among other things that:

1. The Debtor is indebted to Charter in the principal amount of $274,376.45 plus pre-petition interest for a total of $316,978.67 plus its fees and costs incurred in this Bankruptcy Case and in the West Virginia Litigation.

2. The Debtor is further indebted to Charter for attorney's fees and expenses incurred in this Bankruptcy Case and the West Virginia Litigation.

3. This Bankruptcy Court is to determine the amount of attorney's fees and costs incurred in this Bankruptcy Case and the West Virginia Litigation by Charter.

4. Charter is to file a detailed application ("the Fee Application") with this Bankruptcy Court within 20 days of the filing of the Stipulated Agreement.

5. The application need not comply with the Fee Guidelines established by the United States trustee.

6. Withing fourteen days after the filing of the Fee Application, the Debtor and the United States trustee may file any such objections as they deem appropriate.

7. Within ten days of the filing of the last timely objection, Charter may file a response.

8. The Bankruptcy Court shall "consider the [Fee Application] and such permitted objections and responses as may be filed, and thereafter determine the amount of attorney's fees and expenses to be allowed as part of the general unsecured claim of Charter."

9. The parties, and each of them, waive any right to appeal the determination of the Bankruptcy Court regarding the amount of fees to be awarded. The parties do not waive any right to ask the Bankruptcy Court to reconsider its initial determination

    of fees and expenses.

  10.  Charter shall be allowed an unsecured claim in the amount of $316,978.67 plus its costs incurred in this Bankruptcy Case and in the West Virginia Litigation, plus the amount of fees and costs awarded pursuant to the Fee Application.

The Debtor has stipulated to the amount of Charter's claim. It is equal to $316,978.67, plus the amount of fees awarded by this court. On May 22, 2007, Charter filed the Fee Application ("the Application"), supported by more than 250 pages of evidence. The Debtor filed a response in which it asserted that the amount requested in the Fee Application was unreasonable and that the portion of the fees that accrued post-petition were not allowable. Charter timely filed a reply to the Debtor's objection.

The United States trustee has not filed a response to the application for compensation.

### *III. Discussion.*

Prior to considering the application for fees, it is necessary to address the issues raised by the Debtor. The Debtor first objects to the fees on the grounds that they are unreasonable. The Debtor has provided neither discussion of this assertion nor evidence in support of it. The Court, however, will entertain the reasonableness of the fee application in the normal course of considering the fee application.

Second, the Debtor cites In re Saunders, 130 B.R. 208, 214 (Bankr. W.D.Va. 1991) and In re Miller, 344 B.R. 769 (Bankr. W.D.Va. 2006) in support of the proposition that Charter cannot recover its post-petition fees and expenses because its claim is unsecured. In each of those Chapter 13 cases, an undersecured creditor included attorneys' fees in its claim against the estate. In each case, the inclusion of attorneys' fees was based on a provision in the pre-petition contract between

4

the debtor and the creditor.

In Saunders, the Court concluded "when a Chapter 13 plan proposes to pay an undersecured or unsecured creditor the full amount of such creditor's claim the creditor is not entitle to recover post-petition interest, attorneys' fees, costs or other charges from the codebtor, even if such items are provided for in the agreement under which the claim arises." Saunders, 130 B.R. at 213. No doubt the same holding would apply to the recovering attorneys' fees from a debtor. In Miller, the court examined the case law rendered after Saunders was published. It agreed with the Saunders Court and concluded that "an undersecured or unsecured creditor cannot properly be allowed an unsecured claim *against the bankruptcy estate for postpetition contractual attorneys' fees."* Miller, 344 B.R. at 773 (Emphasis added.).

The case at bar contains three facts not present in Saunders or Miller. First, the Settlement Agreement was negotiated and executed by the Debtor, and approved by the Court, post-petition. In Saunders and Miller, the contracts were executed pre-petition and were not approved by the Court. Second, Charter is not to be paid from property of the Debtor's estate, rather, it is to be paid from the proceeds from the sale of the Licence. Third, as a consequence, the payment of the fees by MNE, Inc., the award will not affect the amount of the dividend that is to be paid to each of the other unsecured creditors in this case.

The District Court in the West Virginia Litigation has already determined that "contractual attorney's fees provisions obligated [the Debtor] to reimburse Charter for its reasonable costs and attorneys' fees." The parties have agreed to permit this Court to determine whether, and to what extent, those fees and those incurred by Charter during the pendency of this Bankruptcy Case, are reasonable .

5

Whether attorneys fees are reasonable, and to what extent they are reasonable, is to be determined under the lodestar method. The lodestar amount is the amount that is the product of the reasonable number of hours times a reasonable hourly rate. In determining the lodestar amount, the court is to consider the factors promulgated in <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714, 717-19 (5th Cir.1974), and specifically adopted by the Fourth Circuit in <u>Barber v. Kimbrell's, Inc.</u>, 577 F.2d 216, 226 (4th Cir.), cert. denied, 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978). The twelve factors identified in <u>Johnson</u> which are:

(1) the time and labor required;

(2) the novelty and difficulty of the questions;

(3) the skill requisite to properly perform the legal service;

(4) the preclusion of other employment by the attorney due to acceptance of the case;

(5) the customary fee;

(6) whether the fee is fixed or contingent;

(7) time limitations imposed by the client or the circumstances;

(8) the amount involved and the results obtained;

(9) the experience, reputation, and ability of the attorneys;

(10) the "undesirability" of the case;

(11) the nature and length of the professional relationship with the client; and

(12) awards in similar cases.

<u>Johnson</u>, 488 F.2d at 717-19.

The method by which the <u>Johnson</u> factors have been employed in the analysis of fee applications has changed over time. In 1980, the Fourth Circuit rendered an opinion instructing trial

courts to:

> first ascertain the nature and extent of the services supplied by the attorney from a statement showing the number of hours worked and an explanation of how these hours were spent. The court should next determine the customary hourly rate of compensation. These are essentially <u>Johnson</u> factors 1 and 5. The court should then multiply the number of hours reasonably expended by the customary hourly rate to determine an initial amount for the fee award. Finally, the court should adjust the fee on the basis of the other factors, briefly explaining how they affected the award.

<u>Anderson v. Morris</u>, 658 F.2d 246, 249 (4th Cir. 1980) (Citing <u>In re First Colonial Corp. of America</u>, 544 F.2d 1291, 1298-1300 (5th Cir. 1977).

In 1984, the Supreme Court, in <u>Blum v. Stenson</u>, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891(1984), overruled this aspect of <u>Anderson</u>. In 1986, the Fourth Circuit discussed at length the analysis of the Supreme Court in <u>Blum</u>. The Court concluded that the lodestar amount of attorney fees is the reasonable amount if the <u>Johnson</u> factors are properly considered and applied to the analysis.

> While the Supreme Court continues to endorse use of the Johnson factors in calculating fee awards, <u>Blum</u>, 104 S.Ct. at 1548, the Court has disapproved of the procedure endorsed by this court in <u>Anderson</u>. Out of a concern that upward adjustments of a lodestar figure can sometimes result in "double counting," <u>id.</u> at 1549, the Court has suggested that most <u>Johnson</u> factors are appropriately considered in initially determining the lodestar figure, not in adjusting that figure upward. According to the Court, "the critical inquiry in determining reasonableness [of a fee award] is now generally recognized as the appropriate hourly rate." <u>Blum,</u> 104 S.Ct. at 1547 n. 11. If the hourly rate is properly calculated, "the 'product of reasonable hours times [the] reasonable rate' normally provides a 'reasonable' attorney's fee within the meaning of [the applicable statute under which fees were awarded]." Id. at 1548 (quoting <u>Hensley</u>, 461 U.S. at 434, 103 S.Ct. at 1940).

<u>Daly v. Hill</u>, 790 F.2d 1071, 1077 (4th Cir. 1986).[1] The Court continued noting that:

---

[1] <u>Blum</u> and <u>Daly</u> are civil rights cases, but this court has no reason to believe that the either the Supreme Court or the Fourth Circuit would vary its analysis when considering an award of fees to a professional providing services in a bankruptcy case. The Fourth Circuit has adopted the twelve <u>Johnson</u> factors. <u>Barber v. Kembrell's Inc.</u>, 577 F.2ed 216 (4th Cir. 1978). The Fourth Circuit has specifically adopted the <u>Johnson</u> factors for use in determining fee awards to professionals in bankruptcy cases. <u>Harman v. Levin</u>, 772 F.2d 1150 (4th Cir. 1985).

> . . . as a general rule, the novelty and complexity of a lawsuit will be reflected in the number of billable hours. Where an experienced attorney spends fewer hours on a complex case due to special expertise, that "special skill and experience should be reflected in the reasonableness of the hourly rates. Neither complexity nor novelty of the issues, therefore, is an appropriate factor in determining whether to increase the basic fee award." [Blum] at 1549. Similarly, " 'quality of representation' ... generally is reflected in the reasonable hourly rate." Id.

Daly 790 F.2d at 1078. The Court concluded by stating that a fee that is based upon the lodestar amount, reasonable hours times a reasonable rate, "is presumed to be fully compensatory without producing a windfall." Id. The lodestar fee is now the proper focus of the entire Johnson analysis in most cases. Id.

There are three law firms seeking approval of fees through the Fee Application: (1) Davis Wright Tremaine, LLP, who prosecuted the West Virginia Litigation; (2) Steven L. Higgs, who served as lead bankruptcy counsel; and (3) J. Miles Morgan, who served as local counsel during the West Virginia Litigation (together, "the Applicants").

The compensation and reimbursement requests are as follows:

| Applicant | Date | Fees | Expenses | Total |
|---|---|---|---|---|
| Davis Wright Tremaine | 10/07/04 to 05/22/07 | $353,971.07 | $27,582.83 | $381,553.90 |
| Davis Wright Tremaine | May, 2007 (Supplemental) | $25,183.58 | $197.75 | $25,381.33 |
| Steven L. Higgs | 07/26/06 to 05/21/07 | $22,747.56 | $949.76 | $23,697.32 |
| J. Miles Morgan | 10/07/04 to 05/22/2007 | $25,750.50 | $1,215.59 | $26,966.09 |
| Total | | $427,652.71 | $29,945.93 | $457,598.64 |

*Application of Davis Wright Tremaine, LLC.* Davis Wright Tremaine seeks compensation

8

in the amount of $353,971.07 and reimbursement of expenses in the amount of $27,582.83 for services rendered during the West Virginia Litigation. Each of the Johnson factors will be considered in turn with regard to Davis Wright Tremaine's initial fee application and the supplemental application as well.

(1) The time and labor required. Davis Wright Tremaine has provided a list of 29 categories of services rendered to Charter. Each of the categories appears to be tasks that an attorney prosecuting similar litigation would be required to do in order to fulfill his or her duties to the client. Additionally, Davis Wright Tremaine excluded the fees for three associates resulting in a reduction of more than 500 hours of services and more than $100,000.00 in fees. Davis Wright Tremaine also reduced the total fees requested by excluding fees for two paralegal assistants who monitored FCC proceedings concerning the status of the WDRL-TV broadcast license and further excluded some services rendered by three law clerks, all resulting in an additional reduction of more than $4,000.00.

The Debtor asserts that the use of 28 attorneys by the three Applicants is excessive. The other two applicants employed only three attorneys. Davis Wright Tremaine has employed 21 attorneys in prosecuting these matters. The services of three of those attorneys were excluded from this billing. Nine of those attorneys billed less than five hours. Five other attorneys billed less than ten hours. One attorney billed 14.2 hours. One attorney billed 46 hours. Only the lead counsel and one associate billed more hours than fifty hours. For all practical purposes, Davis Wright Tremaine only employed two attorneys in the prosecution of these matters, a number that is not excessive.

(2) The novelty and difficulty of the questions. The Court concludes that the novelty and difficulty of the issues raised in the West Virginia Litigation required the special expertise of counsel in matters concerning copyright law.

(3) The skill requisite to properly perform the legal service. The Court concludes that Davis Wright Tremaine has the skill requisite to prosecute the West Virginia Litigation.

(4) The preclusion of other employment by the attorney due to acceptance of the case. This is not a significant consideration in this application.

(5) The customary fee. The hourly billing rate of lead counsel is $320.00 to $370.00. The billing rate of the associate assisting him is $215.00 to $261.00 per hour. Both rates reasonable in light of the complexity of litigation.

(6) Whether the fee is fixed or contingent. This is not a factor for consideration.

(7) Time limitations imposed by the client or the circumstances. This factor does not present an unusual consideration in this instance.

(8) The amount involved and the results obtained. While the amount of fees requested exceeds the amount of damages initially sought, the Court concludes that the fees were necessary in order to recover those damages, especially in light of the aggressive manner in which the Debtor asserted its defense.

(9) The experience, reputation, and ability of the attorneys. These factors counsel granting the compensation requested.

(10) The "undesirability" of the case. This is not a factor for consideration in this instance.

(11) The nature and length of the professional relationship with the client. Davis Wright Tremaine has represented Charter, or its predecessors, since 1985. Lead counsel has represented Charter since 1998.

(12) Awards in similar cases. This is not a factor for consideration in this instance.

It is concluded that the fees requested by Davis Wright Tremaine are reasonable under

lodestar analysis when the Johnson factors are considered.

*Application of Law Office of Steven L. Higgs.* Steven L. Higgs seeks compensation in the amount of $22,747.56 and reimbursement of expenses in the amount of $949.76 for services rendered as bankruptcy counsel. Each of the Johnson factors will be considered in turn with regard to his fee application.

(1) The time and labor required. The applicant has expended approximately 100 hours of time in prosecuting this case and has used the assistant of one paralegal.

(2) The novelty and difficulty of the questions. The Court concludes that the novelty and difficulty of the issues raised coordinating the Bankruptcy Case and the West Virginia Litigation required the expertise of an experienced chapter 11 bankruptcy attorney.

(3) The skill requisite to properly perform the legal service. The Court concludes that Mr. Higgs has the skill requisite to represent Charter in this matter.

(4) The preclusion of other employment by the attorney due to acceptance of the case. This is not a significant consideration in this application.

(5) The customary fee. The hourly billing rate of counsel, $225.00 is very reasonable.

(6) Whether the fee is fixed or contingent. This is not a factor for consideration.

(7) Time limitations imposed by the client or the circumstances. This factor does not present an unusual consideration in this instance.

(8) The amount involved and the results obtained. Counsel's fee request is less than 10% of Charter's claim and is quite reasonable.

(9) The experience, reputation, and ability of the attorneys. These factors counsel granting the compensation requested.

(10) The "undesirability" of the case. This is not a factor for consideration in this instance.

(11) The nature and length of the professional relationship with the client. This is not a factor for consideration in this instance.

(12) Awards in similar cases. This is not a factor for consideration in this instance.

It is concluded that the fees requested by Stephen L. Higgs are reasonable under lodestar analysis when the Johnson factors are considered.

*Application of J. Miles Morgan.* J. Miles Morgan seeks compensation in the amount of $25,750.50 and reimbursement of expenses in the amount of $1,215.59 for services rendered as local counsel during the West Virginia Litigation. Each of the Johnson factors will be considered in turn with regard to his fee application.

(1) The time and labor required. The applicant has expended approximately 170 hours of time in serving a local counsel during the West Virginia Litigation. That amount of time is quite reasonable in light of the fact that the litigation has continued for some three years.

(2) The novelty and difficulty of the questions. Counsel provided information concerning local procedures and practice in the courts for the Southern District of West Virginia, matters that were not complex or novel.

(3) The skill requisite to properly perform the legal service. Counsel had and has the skills to provide the services rendered.

(4) The preclusion of other employment by the attorney due to acceptance of the case. This is not a significant consideration in this application.

(5) The customary fee. The hourly billing rate of counsel, $150.00, is very reasonable.

(6) Whether the fee is fixed or contingent. This is not a factor for consideration.

(7) Time limitations imposed by the client or the circumstances. This factor does not present an unusual consideration in this instance.

(8) The amount involved and the results obtained. Counsel's fee request is about 10% of Charter's claim and is quite reasonable, which has been allowed.

(9) The experience, reputation, and ability of the attorneys. These factors counsel granting the compensation requested.

(10) The "undesirability" of the case. This is not a factor for consideration in this instance.

(11) The nature and length of the professional relationship with the client. This is not a factor for consideration in this instance.

(12) Awards in similar cases. This is not a factor for consideration in this instance.

Counsel rendered approximately 170 hours of services over a three year period. His hourly rate is very reasonable. It is concluded that the fees requested by J. Miles Morgan. are reasonable under lodestar analysis when the Johnson factors are considered.

## ORDER

The motion of Wright Tremaine, LLP, Steven L. Higgs, Esq., and J. Miles Morgan, Esq., for an award of compensation and reimbursement of expenses is granted. Davis Wright Tremaine, LLP shall be and hereby is awarded fees in the amount of $379,154.65 ( = $353,971.07 + $25,183.58) and expenses in the amount of $27,780.58 ( = $27,582.83 + $197.75). Steven L. Higgs, Esq. shall be and hereby is awarded fees in the amount of $22,747.56 and expenses in the amount of $949.76. J. Miles Morgan, Esq., shall be and hereby is awarded fees in the amount of $25,750.50 and expenses in the amount of $1,215.59.

So ORDERED.

Upon entry of this Order the Clerk shall forward a copy to Adam D. Caldwell, Esq. Steven L. Higgs, Esq., J. Miles Morgan, Esq., George A. McLean, Jr., Esq., Peter M. Pearl, Esq., Peter Brodell, Esq., and Howard J. Beck, Jr. Esq.

Entered on this  11th  day of October, 2007.

_____
William E. Anderson
United States Bankruptcy Judge